**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rocco V. FILIPPONIO,
Defendant-Appellant.**

**No. 82–1786.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1983.

Decided March 23, 1983.

Sam Adam, Chicago, Ill., for defendant-appellant.

Charles Sklarsky, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and NEAHER,* Senior District Judge.

* The Honorable Edward R. Neaher, United States Senior District Judge for the Eastern District of New York, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

The defendant-appellant Rocco V. Filipponio raises two issues: (1) whether the consecutive sentences imposed by the trial court for the possession of different items is impermissible, and (2) whether the evidence adduced at trial was sufficient to support a finding of guilt beyond a reasonable doubt.

Filipponio was indicted on three counts. Count One charged possession with intent to distribute cocaine on or about July 8, 1981, 21 U.S.C. § 841. In Count Two, Filipponio, a convicted felon, was charged with possession of a Colt firearm on or about July 8, 1981. 18 U.S.C. app. § 1202. Count Three charged that on or about July 10, 1981, Filipponio, a convicted felon, possessed a Beretta firearm. 18 U.S.C. app. § 1202.

In a bench trial Filipponio was found guilty of Counts Two and Three, and guilty of a lesser included offense in Count One (possession of cocaine). Filipponio was sentenced to two years imprisonment and fined $10,000 on Counts One and Three to run consecutively, and sentenced to a term of five years probation under Count Two.

In July 1981, Filipponio resided at apartment 201, 1 Villa Verde Drive, Buffalo Grove, Illinois, although he was not a signatory on the lease and his name was not on the bell designated for the apartment. The building manager knew of no one else residing in apartment 201 during July. Filipponio paid the rent for the apartment and had a special lock installed on the door to the apartment, refusing to give the building manager a key. On each of three occasions in July when federal agents entered apartment 201, Filipponio was there alone.

On July 8, 1981, federal agents searched apartment 201, pursuant to a search warrant, for a weapon and drugs in Filipponio's possession. Upon entering the apartment, the agents discovered Filipponio asleep in the master bedroom and observed a Colt revolver in a holster hanging from a hat rack near the head of Filipponio's bed. Although the agents found no other weapons in the apartment, cocaine was found both in a second bedroom and on top of a dresser in the master bedroom. During the course of the search, Filipponio opened a combination safe located in a walk-in closet off the master bedroom and removed over $40,000.

In executing an arrest warrant for Filipponio on July 10, 1981, federal agents entered apartment 201, finding Filipponio alone and leaning against a cinderblock-and-board bookcase located just inside the front door. While Filipponio went to the master bedroom to dress, an agent who remained behind noticed in plain view a Beretta pistol, located at waist height in one of the cinderblock holes in the vicinity where Filipponio had been leaning.

## I. Consecutive Sentences

Filipponio contends that the trial court erroneously imposed consecutive sentences for his convictions of possession of cocaine and a Colt firearm on July 8, 1981, and his conviction of possession of a Beretta firearm on July 10, 1981. According to Filipponio, "for all practical purposes the alleged possession of all three items" was simultaneous and the record does not support the conclusion that the Beretta seized on July 10, 1981 was not present in the apartment on the occasion of the July 8, 1981 search.

Contrary to Filipponio's assertion, the evidence at trial supports a finding that either Filipponio did not possess the Beretta pistol simultaneously with the Colt revolver and cocaine, or he stored the Beretta pistol in a location other than apartment 201 on July 8, 1981. The nine agents conducting the search on July 8, 1981 were looking for a small gun, but could not locate one despite a "thorough search" and despite looking specifically in the cinderblock bookcase where it was subsequently found on July 10, 1981. There was no evidence that the Beretta firearm was in the apartment on July 8, 1981, and even assuming that Filipponio possessed both firearms on July 8, there is no evidence or argument that he possessed both weapons on July 10.

We must determine whether Filipponio's simultaneous possession of cocaine and a

weapon on July 8, 1981, in violation of two distinct statutes, supports consecutive sentences and whether Filipponio's later possession of a weapon, a violation of one of the same statutes, also supports a consecutive sentence. In determining the appropriateness of consecutive sentences, we must determine "first whether Congress intended that these crimes should be prosecuted and punished cumulatively and second, if so, whether the imposition of cumulative sentences violated the double jeopardy clause of the Fifth Amendment." *United States v. Fountain,* 642 F.2d 1083, 1093 (7th Cir.), cert. denied, 451 U.S. 993, 101 S.Ct. 2335, 68 L,Ed.2d 854 (1981).

### A. Simultaneous Possession of Cocaine and a Weapon

■ In resolving whether Congress intended the cumulative punishment and prosecution of the offenses of possessing cocaine, 21 U.S.C. § 841(a)(1), and of possessing a weapon after conviction of a felony, 18 U.S.C. app. § 1202(a)(1), we must consider whether the charged offenses address the same concern and whether each offense requires proof of an elemental fact that the other does not. *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Fountain,* 642 F.2d at 1094. The main objective of section 1202 is "to restrict the *possession* of firearms by certain groups of people." *United States v. Falletta,* 523 F.2d 1198, 1200 (5th Cir.1975). In contrast, the purpose of section 841 is to reduce drug abuse. 1970 U.S.Code Cong. & Ad.News 4566, 4567. Thus, the two provisions deal with two distinct problems, indicating that Congress intended cumulative punishment. Additionally, each provision requires proof of a fact which the other does not. Whereas section 841 requires proof that a defendant possessed a controlled substance, section 1202 requires proof that a defendant pos-

sessed a firearm and was previously convicted of a felony. Thus, we conclude that Congress intended cumulative punishment.

■ The Double Jeopardy Clause prohibits the imposition of consecutive sentences on multiple convictions for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); A. Campbell, *Law of Sentencing* § 73 at 238 (1978). We must, therefore, determine whether the offenses defined in sections 841 and 1202 are distinct or separate. The test[1] for separate offenses was set forth in the 1932 case of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Generally, under the *Blockburger* approach, consecutive sentences will not violate the Double Jeopardy Clause provided that Congress intended to create two separate crimes subject to cumulative punishment. *See generally Whalen v. United States,* 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *United States v. Fountain,* 642 F.2d 1083, 1084–85 (7th Cir.), cert. denied, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981). Thus, as we observed in analyzing Congress's intent to permit cumulative punishment, the crimes created by sections 841 and 1202 involve the proof of different elemental facts. Filipponio is not being punished twice for the same offense. He simultaneously violated the narcotics laws and the weapons laws of the United States. Consecutive sentences for Filipponio's simultaneous possession on July 8, 1981 of cocaine and a Colt revolver were properly imposed by the district judge.

---

1. This is the test we followed in *United States v. Fountain,* 642 F.2d 1083 (7th Cir.), cert. denied, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981). A different result would not obtain, however, under either the same-transaction test or the legislative-intent test described in A. Campbell, *Law of Sentencing* § 74 (1978).

**B. Possession of Weapons on Two Separate Occasions**

The second sentencing issue is whether possessing two different firearms on two different occasions can be prosecuted as separate violations of the same statute and punished by consecutive sentences. By possessing a Colt revolver on July 8, 1981 and a Beretta pistol on July 10, 1981, Filipponio violated the same statute by two different acts on two separate days.

The Supreme Court, in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), dealt with a similar issue. The Court upheld consecutive sentences for each of two illegal sales of morphine to the same purchaser within a two-day period, plus a third consecutive sentence imposed for violating the statutory requirement of a written purchase order in connection with one of the sales. Finding that the successive sales of narcotics were separate and distinct acts, not continuous conduct, the Court concluded that the accused had twice violated the same law and was subject to punishment by consecutive sentences.

The number of firearms a felon possesses does not determine the number of offenses he commits. Possession of numerous firearms may be either distinct acts or continuous conduct. We have held that several firearms simultaneously possessed by a convicted felon on a single date at a single location constitutes a single offense under section 1202 "absent a showing that two firearms were stored or acquired at different times or places." *United States v. Calhoun,* 510 F.2d 861, 869 (7th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975). Other circuits which have considered the question also follow this rule. *See, e.g., United States v. Wiga,* 662 F.2d 1325, 1336 (9th Cir.1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982); *United States v. Hodges,* 628 F.2d 350, 351–52 (5th Cir.1980); *United States v. Bullock,* 615 F.2d 1082,

1085 (5th Cir.), *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980); *United States v. Rosenbarger,* 536 F.2d 715, 721 (6th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Steeves,* 525 F.2d 33, 39 (8th Cir. 1975). In *Wiga* the Sixth Circuit applied the qualifying exception to the general rule to reverse a dismissal of a count alleging a violation of 18 U.S.C. app. § 1202(a). The *Wiga* court concluded that the district court erroneously failed to apply the exception where the evidence established that a convicted felon acquired the two firearms at different times and in different places, and therefore supported separate units of prosecution under section 1202(a). *Wiga,* 662 F.2d at 1336–37. *United States v. Bullock,* 615 F.2d at 1086, also applied the exception to uphold multiple convictions where the felon possessed the weapons at the same time and same place, but acquired them on different dates.

The uncontroverted evidence establishes that Filipponio possessed the two weapons at different times and at different places. The evidence adduced at trial indicated that either Filipponio did not possess the Beretta on July 8, 1981 or that he stored the Beretta at a location other than his apartment. Furthermore, Filipponio does not contend that he possessed both weapons on July 10, 1981. The indictments allege the two distinct days of possession. The district court properly imposed consecutive sentences.[2]

**II. *Sufficiency of the Evidence***

Filipponio also challenges the sufficiency of the evidence against him on the issue of possession of the two weapons and of the narcotics. As a matter of law, the district court concluded that Filipponio lived in and maintained principal control and dominion of the apartment in question, and that control and dominion extended to

---

**2.** The cases Filipponio relies on are distinguishable. Filipponio cites *Braden v. United States,* 270 F. 441 (8th Cir.1920), and *People v. Manning,* 71 Ill.2d 132, 15 Ill.Dec. 765, 374 N.E.2d 200 (1978). Both cases involved simultaneous

possession of different narcotic substances, unlike this case involving different dates for the same items and different items on the same date.

the contents of the apartment.[3] We must view the evidence in a light most favorable to the government. *United States v. White,* 660 F.2d 1178, 1182 (7th Cir.1981).

The evidence indicated that Filipponio alone resided in apartment 201 during July of 1981. Filipponio paid the rent, had a special lock installed, and exercised control over the apartment by sleeping in the master bedroom, storing his clothing there, and opening a combination lock located in a walk-in closet. *See generally Walker v. United States,* 489 F.2d 714 (8th Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974). The two guns and some of the narcotics were readily visible to anyone walking through the apartment. *See generally United States v. Smith,* 591 F.2d 1105 (5th Cir.1979). These facts, when considered in the light most favorable to the government, are sufficient evidence of constructive possession to sustain Filipponio's convictions.

AFFIRMED.

See also, 7th Cir., 659 F.2d 750.

---

**3.** *United States v. Ferg,* 504 F.2d 914, 916–17 (5th Cir.1974) ("In order to establish constructive possession, the government must produce evidence showing ownership, dominion or control over the contraband itself or the premises or vehicle in which the contraband is concealed.").