## BALL v. UNITED STATES

No. 84–5004.  Argued January 9, 1985—Decided March 26, 1985

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, BLACKMUN, REHNQUIST, and O'CONNOR, JJ., joined.  MARSHALL, J., concurred in the judgment.  STEVENS, J., filed an opinion concurring in the judgment, *post,* p. 867.  POWELL, J., took no part in the decision of the case.

*Jo S. Widener,* by appointment of the Court, 469 U. S. 928, argued the cause and filed briefs for petitioner.

*Andrew J. Pincus* argued the cause *pro hac vice* for the United States.  With him on the brief were *Solicitor General*

*Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey, Robert J. Erickson,* and *Thomas E. Booth.*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a felon possessing a firearm may be convicted and concurrently sentenced under 18 U. S. C. § 922(h)(1) for receiving that firearm, and under 18 U. S. C. App. § 1202(a)(1) for possessing the same weapon. 469 U. S. 816 (1984).

## I

After driving around Honaker, Virginia, with several acquaintances, including petitioner Truman Ball, Hubert Romans discovered that his .32-caliber nickel-plated Rossi revolver was missing from the back seat of his car.[1] He reported the incident to the Russell County Sheriff's Department. Subsequently, a neighbor notified the Sheriff that Ball had threatened him with a pistol matching the description of Romans' revolver. Later that same day, the police located Ball at another neighbor's home where Ball had tried unsuccessfully to sell the revolver. When the police told Ball he was under arrest, Ball fled but was promptly apprehended with Romans' revolver in his possession.

Ball, a previously convicted felon,[2] was indicted on charges of receiving a firearm shipped in interstate commerce, 18 U. S. C. §§ 922(h)(1) and 924(a), and possessing that firearm, 18 U. S. C. App. § 1202(a)(1).[3] It is conceded that both counts rest on the same conduct. Ball was convicted on both

---

[1] In October 1981, Elliot Brothers of South Carolina had shipped the revolver to McGlothlin's Store in Honaker, Virginia. On February 22, 1982, McGlothlin sold the gun to Romans.

[2] At the outset of the trial, the parties stipulated that Ball previously had been convicted of the state felony of threatening a dwelling house. App. 2–3.

[3] See Appendix to this opinion for the complete texts of the relevant statutes.

counts[4] by a jury in the Western District of Virginia and sentenced to consecutive terms of three years' imprisonment on the receipt count and two years' imprisonment on the possession count, the latter sentence suspended with two years' probation.

On appeal Ball challenged the validity of the consecutive sentences. The Government conceded that under *United States* v. *Burton,* 629 F. 2d 975 (CA4 1980), cert. denied, 450 U. S. 968 (1981), consecutive sentences could not be imposed for unlawful receipt and unlawful possession of the same firearm, when the unlawful possession was incident to its unlawful receipt. The Court of Appeals accepted this concession and adhered to its statement in *Burton* that "Congress in these firearms statutes created separate offenses, but did not authorize pyramiding penalties." 734 F. 2d 965, 966 (CA4 1984) (citing *Burton, supra,* at 977). The Court of Appeals remanded the case to the District Court with instructions to modify the sentences to make them concurrent.

The application of the firearms statutes, § 922(h)(1) and § 1202(a)(1), charging a convicted felon with receiving and possessing the same gun, has produced conflicting decisions among the Courts of Appeals.[5] We granted certiorari to resolve this conflict. We reverse.

---

[4] The chain of sale described in n. 1, *supra,* established the interstate commerce connection required by the firearms statutes. See *Barrett* v. *United States,* 423 U. S. 212 (1976); *Scarborough* v. *United States,* 431 U. S. 563 (1977).

[5] The Tenth Circuit has held that a convicted felon may be convicted and sentenced cumulatively under both statutes. *United States* v. *Larranaga,* 614 F. 2d 239, 241 (1980). The Fifth, Ninth, and District of Columbia Circuits have concluded that the Government must elect to prosecute a convicted felon under one of the statutes. *United States* v. *Larson,* 625 F. 2d 67, 69 (CA5 1980); *United States* v. *Conn,* 716 F. 2d 550, 553 (CA9 1983); *United States* v. *Girst,* 207 App. D. C. 89, 92, 645 F. 2d 1014, 1017 (1979). The Fourth Circuit has decided that a convicted felon may be convicted under both statutes, but the separate sentences must run concurrently. *United States* v. *Burton,* 629 F. 2d 975, 977–978 (1980). The Third and

## II

This case requires the Court once again to resolve the "partial redundancy" of §§ 922(h) and 1202(a), provisions of Titles IV and VII, respectively, of the Omnibus Crime Control and Safe Streets Act of 1968. *E. g.*, *United States* v. *Batchelder*, 442 U. S. 114, 118 (1979); *United States* v. *Bass*, 404 U. S. 336, 341–343, and n. 9 (1971). In these two Titles of the Omnibus Act, Congress sought to control the interstate traffic and availability of firearms. Although Congress' purposes are obvious, courts understandably have had difficulty applying the overlapping provisions of the Act. This case affords an opportunity to address the application of Titles IV and VII to one set of circumstances—where a single act is relied upon to establish a convicted felon's unlawful receipt and his unlawful possession of the same firearm.[6]

## A

It is clear that a convicted felon may be prosecuted simultaneously for violations of §§ 922(h) and 1202(a) involving the same firearm. This Court has long acknowledged the Government's broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case. *E. g.*, *United States* v. *Goodwin*, 457 U. S. 368, 382 (1982); *Confiscation Cases*, 7 Wall. 454, 457–459 (1869).

---

Seventh Circuits have remanded cases to the District Courts in order to vacate one of the convictions and sentences. *United States* v. *Taylor*, 635 F. 2d 232, 233 (CA3 1980); *United States* v. *Martin*, 732 F. 2d 591, 593 (CA7 1984).

[6] We have no occasion to consider here whether a felon may be convicted of both offenses if he possessed a firearm on one occasion and, after giving up possession, later reacquired the gun, see, *e. g.*, *United States* v. *Robbins*, 579 F. 2d 1151 (CA9 1978), or if he received and possessed different weapons at different times or in various places, see, *e. g.*, *United States* v. *Vance*, 724 F. 2d 517 (CA6 1983); *United States* v. *Filipponio*, 702 F. 2d 664 (CA7 1983).

In *Batchelder*, this Court recognized that §§ 922(h) and 1202(a) proscribed similar conduct where the defendant is a convicted felon, but concluded that

"each substantive statute, in conjunction with its own sentencing provision, operates independently of the other." 442 U. S., at 118.

This Court rejected the argument that § 1202(a) impliedly repealed § 922(h) with respect to acts covered by both provisions, noting that both the statutory language and the legislative history showed that the two provisions were to be applied independently. See *id.*, at 118–121.[7] Under these circumstances there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes.[8]

---

[7] Several Courts of Appeals have interpreted *Batchelder* to forbid the Government to proceed against a convicted felon in a single prosecution under §§ 922(h) and 1202(a). See, *e. g., United States* v. *Larson, supra; United States* v. *Girst, supra; United States* v. *Conn, supra.* These courts have relied upon the statement in *Batchelder* that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants," 442 U. S, at 123–124, interpreting the reference to "either" statute to require the Government to proceed under only one of the two provisions. The Court's observation was a response to the claim that the two statutes permitted excessive prosecutorial discretion because the Government could in effect choose the penalty to apply in a given case by proceeding under one statute instead of the other. The Court's reference to "either" statute merely reaffirmed the Government's discretion to charge under one statute rather than the other. The Court had no intention of restricting the Government to prosecuting for only a single offense, an issue not before the Court. This is confirmed by *Batchelder*'s conclusion that the two statutes are "each fully enforceable on [their] own terms." *Id.*, at 119.

Given this congressional design, the Double Jeopardy Clause imposes no prohibition to simultaneous prosecutions. In *Ohio* v. *Johnson*, 467 U. S. 493 (1984), this Court held that even where the Clause bars cumulative punishment for a group of offenses, "the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution." *Id.*, at 500.

[8] Indeed, in *United States* v. *Gaddis*, 424 U. S. 544 (1976), the Court concluded that "there can be no impropriety . . . for a prosecutor to file

## B

To say that a convicted felon may be prosecuted simultaneously for violation of §§ 922(h) and 1202(a), however, is not to say that he may be convicted and punished for two offenses. Congress can be read as allowing charges under two different statutes with conviction and sentence confined to one. Indeed, "[a]ll guides to legislative intent," *United States* v. *Woodward,* 469 U. S. 105, 109 (1985), show that Congress intended a felon in Ball's position to be convicted and punished for only one of the two offenses if the possession of the firearm is incidental to receiving it.

This Court has consistently relied on the test of statutory construction stated in *Blockburger* v. *United States,* 284 U. S. 299, 304 (1932), to determine whether Congress intended the same conduct to be punishable under two criminal provisions. The appropriate inquiry under *Blockburger* is "whether each provision requires proof of a fact which the other does not." See, *e. g., United States* v. *Woodward, supra,* at 107; *Albernaz* v. *United States,* 450 U. S. 333, 337 (1981); *Whalen* v. *United States,* 445 U. S. 684, 691–692 (1980). The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.

For purposes of applying the *Blockburger* test in this setting as a means of ascertaining congressional intent, "punishment" must be the equivalent of a criminal conviction and not simply the imposition of sentence. Congress could not have intended to allow two convictions for the same conduct, even if sentenced under only one; Congress does not create criminal offenses having no sentencing component. See *United States* v. *Hudson & Goodwin,* 7 Cranch 32, 34 (1812); *Tennessee* v. *Davis,* 100 U. S. 257, 275 (1880) (Clifford, J., dissent-

---

an information containing counts charging violations of" several different provisions of the federal bank robbery statute where there is evidence to support the charges, even though the defendant could not in the end stand convicted of both offenses. *Id.,* at 550.

ing).   Cf. Fed. Rule Crim. Proc. 32(b)(1), which provides that the sentence is a necessary component of a "judgment of conviction."

Applying this rule to the firearms statutes, it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon.   "[W]hen received, a firearm is necessarily possessed."   *United States* v. *Martin,* 732 F. 2d 591, 592 (CA7 1984).[9]   In other words, Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act.

The legislative history of §§ 922(h) and 1202(a) supports this reading of congressional intent.   Titles IV and VII, enacted together as components of the Omnibus Act,[10] disclose "Congress' worry about the easy availability of firearms, especially to those persons who pose a threat to community peace."   *Lewis* v. *United States,* 445 U. S. 55, 66 (1980). Accordingly, "[e]ach [Title] seeks to keep a firearm from 'any person . . . who has been convicted' of a felony . . . ."   *Id.,* at 64.

Section 922(h), the receipt statute, is part of a " 'carefully constructed package of gun control legislation,' which had been in existence for many years."   *Batchelder,* 442 U. S., at

---

[9] As the Government suggests, the converse may not be true.   For example, a felon may possess a firearm without having "received" it; he may have manufactured the gun himself.   Brief for United States 13–14.

[10] Four months after enacting the Omnibus Act, the same Congress amended and reenacted Titles IV and VII as part of the Gun Control Act of 1968.   82 Stat. 1213.   Congress renewed its effort to prohibit felons from having weapons.   See, *e. g.,* S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968); 114 Cong. Rec. 21784 (1968) (remarks of Rep. Celler).   As the Court observed in *Barrett* v. *United States,* 423 U. S., at 220, the Gun Control Act "reflects a similar concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons."

120 (quoting *Scarborough* v. *United States*, 431 U. S. 563, 570 (1977)).[11] One principal purpose of Title IV was to make "it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency . . . ." S. Rep. No. 1097, 90th Cong., 2d Sess., 28 (1968).

Section 1202(a), on the other hand, was a "last-minute Senate amendment" to the Omnibus Act, "hastily passed, with little discussion, no hearings, and no report." *United States* v. *Bass*, 404 U. S., at 344 (footnote omitted). The circumstances surrounding consideration of Title VII and the haste in which it was enacted may well explain why it does not dovetail neatly with the prohibition that was, at the time of its passage, already contained in Title IV.[12] Title VII was enacted as supplementary legislation; Title VII filled the gaps in and expanded the coverage of Title IV.[13] In short,

---

[11] Section 922(h) stemmed from § 2(f) of the Federal Firearms Act of 1938, which had made it unlawful for "any person who has been convicted of a crime of violence or is a fugitive *[sic]* from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce . . . ," 52 Stat. 1251. Section 922(h), although maintaining § 2(f)'s operative phrase, expanded the categories of persons prohibited from receiving firearms. See Appendix to this opinion.

[12] Senator Tydings, for example, explained that "Title VII . . . is . . . primarily designed to restrict access to handguns to criminals, juveniles, and fugitives." 114 Cong. Rec. 13639 (1968). See also *id.*, at 13868, 14773 (remarks of Sen. Long). For a concise review of Title VII's surprisingly swift passage through the Congress, see *Scarborough* v. *United States*, 431 U. S. 563, 573–574 (1977); *United States* v. *Bass*, 404 U. S. 336, 344, n. 11 (1971).

[13] Each statute reaches substantial groups of people not covered by the other. Section 922(h), for example, covers persons who are under indictment for a felony, who are fugitives, and who are narcotics offenders. Section 1202(a), on the other hand, covers persons dishonorably discharged from the service, illegal aliens, and persons who have renounced their citizenship. Senator Long explained that the assortment of persons brought within the ambit of § 1202(a) reflected those responsible for the rash of assassinations and publicized murders in "recent history," which included the deaths of President Kennedy and Martin Luther King, Jr., as well as

we are persuaded that Congress had no intention of creating duplicative punishment for one limited class of persons falling within the overlap between the two Titles—convicted felons who receive firearms and who, by definition, possess them. The independent but overlapping statutes simply are not "directed to separate evils" under the circumstances. *Albernaz*, 450 U. S., at 343.[14]

## C

Having concluded that Congress did not intend petitioner's conduct to be punishable under both §§ 922(h) and 1202(a), the only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions. The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See *Missouri* v. *Hunter*, 459 U. S. 359, 368 (1983).

The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of

---

the murders of several civil rights workers in the South. 114 Cong. Rec. 14773 (1968). Only two groups—convicted felons and adjudicated mental incompetents—fall within the overlap between the two provisions. There is no suggestion in the legislative history that these persons pose a greater threat to society such that Congress thought they deserved to be punished more severely, *i. e.*, under both statutes for a single act.

[14] This appears to be the import of the Government's concession in *Taylor* v. *United States*, 624 F. 2d 1092 (CA3), vacated and remanded, 449 U. S. 895 (1980), where the petitioner's consecutive sentences for violating §§ 922(h) and 1202(a) had been upheld by the Court of Appeals under circumstances identical to those presented in this case. Before this Court, the Government acknowledged that "since receipt of a firearm will almost necessarily entail possession of that firearm . . . we agree with petitioner that it is unlikely that Congress intended to permit consecutive punishment in the circumstances presented here." Memorandum for United States in *Taylor* v. *United States*, O. T. 1980, No. 80–5187, pp. 2–3.

the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See *Benton* v. *Maryland*, 395 U. S. 784, 790–791 (1969); *Sibron* v. *New York*, 392 U. S. 40, 54–56 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

## III

We hold that Congress did not intend a convicted felon, in Ball's position, to be convicted of both receiving a firearm in violation of 18 U. S. C. § 922(h), and possessing that firearm in violation of 18 U. S. C. App. § 1202(a). Accordingly, we vacate the judgment of the Court of Appeals and remand with instructions to have the District Court exercise its discretion to vacate one of the convictions.

*It is so ordered.*

JUSTICE MARSHALL concurs in the judgment.

JUSTICE POWELL took no part in the decision of this case.

## APPENDIX TO OPINION OF THE COURT

Title 18 U. S. C. § 922(h) provides:

"It shall be unlawful for any person—

"(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

"(2) is a fugitive from justice;

"(3) is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

"(4) has been adjudicated as a mental defective or has been committed to any mental institution;

"to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Title 18 U. S. C. § 924(a) provides in pertinent part:

"Whoever violates any provision of this chapter . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine."

Title 18 U. S. C. App. § 1202(a) provides:

"Any person who—

"(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

"(2) has been discharged from the Armed Forces under dishonorable conditions, or

"(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

"(4) having been a citizen of the United States has renounced his citizenship, or

"(5) being an alien is illegally or unlawfully in the United States,

"and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this

Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

JUSTICE STEVENS, concurring in the judgment.

The Court correctly holds that petitioner's conduct may support a conviction under either § 922(h)(1) or § 1202(a)(1), but not both. In reaching that conclusion the Court unnecessarily volunteers the opinion that "there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes." *Ante,* at 860; see also *ante,* at 859. Even if that opinion were well founded, I see no reason why this Court should go out of its way to encourage prosecutors to tilt the scales of justice against the defendant by employing such tactics.

The views that JUSTICE MARSHALL expressed in his dissent in *Missouri* v. *Hunter,* 459 U. S. 359, 371–372 (1983), succinctly explain why I concur in the Court's judgment today:

"[T]he entry of two convictions and the imposition of two sentences cannot be justified on the ground that the legislature could have simply created one crime but prescribed harsher punishment for that crime. This argument incorrectly assumes that the total sentence imposed is all that matters, and that the number of convictions that can be obtained is of no relevance to the concerns underlying the Double Jeopardy Clause.

"When multiple charges are brought, the defendant is 'put in jeopardy' as to each charge. To retain his freedom, the defendant must obtain an acquittal on all charges; to put the defendant in prison, the prosecution need only obtain a single guilty verdict. The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges. The very fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that he must be guilty

of at least one of those crimes. Moreover, where the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise verdict. The submission of two charges rather than one gives the prosecution 'the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.' *Cichos* v. *Indiana*, 385 U. S. 76, 81 (1966) (Fortas, J., dissenting from dismissal of certiorari)."*

Accordingly, I concur in the judgment.

---

*The following footnote is appended to the quoted passage:

"It is true that compromise is possible even under the familiar procedure whereby a lesser included offense is submitted along with a greater offense and the jury is told that it can convict on only one charge. Under the usual procedure, however, the risk of an irrational compromise is reduced by the rule that a lesser included offense will not be submitted to the jury if the element that distinguishes the two offenses is not in dispute. See, *e. g.*, *Sansone* v. *United States*, 380 U. S. 343 (1965); *United States* v. *Tsanas*, 572 F. 2d 340, 345–346 (CA2), cert. denied, 435 U. S. 995 (1978)." 459 U. S., at 372, n. 4 (MARSHALL, J., dissenting).