LOUIS TELFEYAN AND LYNN TELFEYAN, Petitioners v. COMMISSIONER INTERNAL REVENUE, Respondent
Telfeyan v. Commissioner
Docket No. 10621-87
United States Tax Court
T.C. Memo 1988-425; 1988 Tax Ct. Memo LEXIS 452; 56 T.C.M. (CCH) 96; T.C.M. (RIA) 88425; September 7, 1988
Louis and Lynn Telfeyan, pro se. Monica J. Miller, for the respondent. GALLOWAY
MEMORANDUM OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rule 180 et seq. [1]
Respondent determined deficiencies in, and additions to, petitioners' 1983 Federal income tax as follows: Additions To Tax Sections
Deficiency
6653(a)(1) 6653(a)(2)
$ 4,520.66
$  266.03
50% of the
interest due
on $ 4,5-0.66
*454 After a concession [2] by petitioners, the issues for decision are: (1) whether petitioner's rights were violated when the Court refused to allow a non-attorney not admitted to practice before this Court to represent them as counsel or assist them in presenting their case at trial; (2) whether petitioners are entitled to a deduction for contributions allegedly made to the Universal Life Church; (3) whether petitioners are entitled to a deduction for other contributions totaling $ 60; (4) whether petitioners are entitled to deduct Schedule C expenses in excess of the amount allowed by respondent; (5) whether petitioners are liable for additions to tax under sections 6653(a)(1) and 6653(a)(2); and (6) whether petitioners are liable for damages pursuant to section 6673. Petitioners were residents of 1300 Bridlebrook Drive, Casselberry, Florida at the time their petition was filed. A stipulation of facts was not filed with the Court when this case was called for trial at Jacksonville, Florida on October 5, 1987. Respondent however, filed a trial memorandum *455 and a motion to dismiss and for damages pursuant to section 6673. After trial commenced, the parties agreed to stipulate into the record petitioners' 1983 tax return and respondent's notice of deficiency mailed to petitioners on January 28, 1987. 1. Representation By Or Assistance From Person Not Admitted To Practice Before The Tax Court
When the case was first called for trial from the trial calendar, petitioners were not present. Scott Slayback (Slayback) answered on petitioners' behalf. Slayback is petitioners' non-attorney tax consultant who prepared their 1983 tax return. Slayback advised the Court that he had conferred with petitioners the previous day and that they were en route to Jacksonville from their home at Casselberry, a suburb of Orlando, about 130 miles away. At trial, respondent moved and the Court granted respondent's motion that Slayback not be permitted to represent petitioners or sit at the counsel table and assist petitioners in the presentation of their case. Petitioners objected and renewed their objection by written brief, claiming "petitioners had sore need of his advice and counsel during the course of the trial. Petitioners could not afford *456 to hire the type of counsel proscribed (sic) by the Rules of the Court. Long ago the U.S. Supreme Court had said that the Rules of any Court should not take presidence (sic) over the service of Justice. The best possible presentation of the Petitioners (sic) case was not possible under this handicap." In Cupp v. Commissioner,65 T.C. 68, 85 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977), we refused to allow the taxpayer "counsel of his own choosing" with respect to a person not admitted to practice before this Court who was not an attorney admitted to practice before any Court. [3] In Ruggere v. Commissioner,78 T.C. 979 (1982), a taxpayer's non-attorney son not admitted to practice before this Court was not allowed to represent his father before us by signing documents. However, the son was allowed to sit at the taxpayer's counsel table for the purpose of assisting the taxpayer present his case. *457 In granting respondent's motion that Slayback not be allowed to assist petitioners present their case, we gave careful consideration to respondent's detailed memorandum filed in support of his motion to dismiss and motion for damages, which states in part: 2. By letter dated June 24, 1985, respondent contacted petitioners, informed petitioners that their federal income tax return for 1983 had been selected for examination and requested that they call or write the Internal Revenue Service office to schedule an appointment. 3. Petitioners did not schedule an appointment and in the months that followed petitioners were contacted on eight additional occasions including service of a summons on December 3, 1986. 4. In spite of numerous opportunities to do so, petitioners did not provide the requested documentation (except with respect to a few items) or an explanation to respondent with regard to their 1983 federal tax return at that time or at any time since. 5. Petitioners refused to consent to extend the statute of limitations with regard to the 1983 tax year. Therefore, a notice of deficiency was issued for the 1983 tax year on January 28, 1987. The notice of deficiency *458 reflected acceptance of most of the substantiation presented by petitioners. The notice of deficiency made three adjustments: it disallowed a $ 9,264.00 charitable contribution to the Universal Life Church, disallowed Schedule C expenses and asserted unreported income of $ 1,947.00. Additions to tax under the provisions of I.R.C. section 6653(a)(1) and 6653(a)(2) were also asserted. 6. A petition was filed on April 24, 1987 in response to the notice along with the same inappropriate motions that this Court had denied in all cases where Mr. Slayback is involved (Motion for Jury Trial and Motion for Representation of Petitioner's Choice). 7. Based upon respondent's past experience with petitioners, District Counsel's office regained jurisdiction from the Appeals Office after referral but before the Appeals Office had met with petitioners, District Counsel then offered petitioners a "Branerton" conference by letter dated July 1, 1987. In addition, this letter and all subsequent letters sent by District Counsel's office encouraged petitioners to cooperate so as not further delay resolution of the issues and included cases wherein this Court had determined that the Universal *459 Life Church issue was a frivolous one. 8. Petitioners' response to respondent's July 1, 1987 letter was a request for an Appeals conference in Orlando. This request was made, in spite of the fact that petitioners were offered an Appeals conference prior to the issuance of the notice which was canceled by petitioners. 9. Consequently, on July 22, 1987 respondent served petitioners with Request for Admissions and Request for Production of Documents * * *. 10. Petitioners' responses * * * to formal discovery were incomplete, evasive and inadequate and contradicted sworn testimony previously given by them. Petitioners also complained that they should be allowed to produce the requested documents in Orlando. In light of the fact that petitioners were not represented by counsel, respondent, by letter dated September 8, 1987, provided petitioners with an opportunity to present the documentation in the Internal Revenue Service office in Orlando, provided petitioners with a detailed explanation as to why their responses were inadequate, and again reiterated that petitioners' position with respect to the Universal Life Church issue was frivolous. A stipulation of Facts was also *460 included with this letter. 11. Petitioners did not respond to the September 8, 1987 letter. Therefore, a subpoena was served upon petitioners on September 10, 1987. This subpoena requested all documents which were the subject of respondent's Request for Production of Documents: 12. By Letter dated September 29, 1987, respondent express mailed to petitioners: (a) First Supplemental Stipulation of Facts; (b) a copy of the transcripts of petitioners' sworn testimony taken during an interview among petitioners, their attorneys and two Internal Revenue Service special agents which respondent intends to introduce at trial; and (c) a copy of a recent Tax Court decision, Burwell v. Commissioner, 89 T.C. No. 41 (1987). 13. As of October 2, 1987 respondent has not been contacted by petitioners and has received no documentation or executed stipulations in this case. Petitioners reluctantly admitted that Slayback prepared the petition in this case. [4] We are convinced that all documents furnished by petitioners in this case were prepared by Slayback and that Slayback's presence at the counsel table with petitioners would have constituted representation of petitioners *461 by a person unauthorized to practice before this Court rather than mere assistance of a taxpayers by his tax preparer. Slayback is well-known in the Jacksonville, Florida, area for his attempts to frustrate respondent's administration of the tax laws by his obstinate attempt to represent taxpayers before the Internal Revenue Service without proper authorization. See Mulvaney v. Commissioner,T.C. Memo. 1988-243, slip opinion p. 7, 8. It is clear to us that petitioners were continuously aided and abetted by Slayback in their stubborn refusal to cooperate with respondent in preparing this case for trial. Moreover, to allow Slayback to assist petitioners at the counsel table would have further disrupted an already difficult trial. 2. Universal Life Church Contributions Deduction
*462 Petitioners claimed and respondent disallowed a charitable contribution to the Universal Life Church of Modesto, California (ULC Modesto) in the amount of $ 16,409.72 [5] In Burwell v. Commissioner,89 T.C. 580, 597 (1987), we stated, "Since 1980, this Court alone has considered more than 130 cases involving claimed charitable contributions to ULC Modesto substantially identical in nature to those at bar. The claimed deduction has not been allowed in any of these cases." We find this case to be no different than any of the previous 130 plus cases. The record discloses that Mr. Telfeyan filed a business Schedule C in 1983, reporting gross income of $ 6,475.26 and a net loss of $ 7,742.29. He also reported taxable capital gain from sales of stocks totaling $ 26,296.23 prior to his marriage to Lynn Effer on September 17, 1983. Mrs. Telfeyan reported W-2 earnings in 1983 of $ 98.31. Mr. Telfeyan became a member of ULC Modesto in August 1983, receiving charter *463 No. 4355 as a "minister" of that church. After their marriage, petitioners opened and made deposits [6] in a checking account in a Casselberry, Florida bank in the name of Universal Life Church, chart No. 21355. [7] Petitioners wrote checks during the remainder of 1983 on these accounts for mortgage, household and other personal expenses to "U.L.C.," which totaled $ 16,409.72. Only petitioners were authorized to sign checks on their ULC account. Petitioners never communicated with ULC Modesto in California. It is well established that deductions are a matter of legislative grace, and that taxpayers must satisfy the specific statutory requirements for the deductions they claim. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without published opinion *464 767 F.2d 931 (9th Cir. 1985). Taxpayers bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142 (a). A deduction is allowable under the provisions of section 170 when a contribution or gift is made to a qualified organization which is organized and operated exclusively for religious or charitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual. Here, petitioners' dominion and control over their Florida ULC account precludes a finding that petitioners have made a charitable contribution or "gift." See Davis v. Commissioner,81 T.C. at 817. Furthermore, because of petitioners' adamant refusal to stipulate facts, there is no documentary evidence supporting the formation and operation of petitioners' ULC "church" or chapter, only petitioners' self-serving incredible testimony. Neither petitioner has a religious background or training. On occasion, each has attended the Lutheran Church. Mr. Telfeyan testified that the purpose of forming petitioners' "church" was "not for a tax deduction" but "to practice our *465 religion" or "personal ministry" as he and Mrs. Telfeyan desired, in contravention to "a lot of people (who) attend churches in this country * * * for a lot of the wrong reasons." It is clear that petitioners have failed to prove that their "church" was "organized and operated exclusively for religious purposes." Sec. 170 (c)(2)(B). See Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. without published opinion 603 F.2d 211 (2d Cir. 1979). Finally, no deduction is allowable when the ULC account deposits, as here, inure to the benefit of the taxpayers in question. Sec. 170(c)(2)(C); McGahen v. Commissioner,76 T.C. 468, 482-483 (1981), affd. without published opinion 702 F.2d 664 (3d Cir. 1983). Respondent is sustained as to this issue. 3. Other Contributions
In addition to the ULC Modesto deduction, petitioners claimed unidentified cash contributions of $ 60. At trial, Mrs. Telfeyan testified that she wrote six $ 10 checks in 1983 to an alleged charitable organization called "Hunger Project," whose purpose was to "end world hunger." She failed to produce the checks. Since petitioners' testimony *466 lacks documentary corroboration, the deduction is disallowed. See Fixel v. Commissioner,T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975). 4. Schedule C Expenses
Petitioners reported a 1983 business C loss as follows: Gross Income
$  6,475.26 Advertising * $    831.22
Bank Service Charges * 38.10
Car and Truck Expenses
1,259.57
Depreciation
2,248.30
Dues and Publications
39.91
Freight * 88.05
Insurance
546.68
Interest on Bus. Indebtedness
512.67
Legal and Professional Services * 30.00
Office Expense * 604.14
Rent on Business Property
3,609.47
Repairs and "T.B.A."
787.97
Travel and Entertainment
631.12
Utilities and Telephone
1,051.39
Tolls and Parking * 33.70
Postage * 125.40
Education (Sales) * 780.50
[8] $ 14,218.19
Loss
[9] $ (7,742.29)
*467 At trial, respondent's attorney objected to the introduction by petitioners of any additional receipts or other evidence purporting to verify Schedule C expenses in excess of $ 3,377 allowed by the Appeals Division officer. Respondent's attorney alleged that she (as set forth in respondent's motion) had served petitioners with a request to produce documents verifying claimed Schedule C expenses on July 22, 1987, as to which petitioners failed to comply. In opposing respondent's objection, petitioners argued that they had in their possession numerous receipts which, when presented to the Court, would prove the deductibility of the disallowed expenses. The Court then ruled that petitioners were precluded from submitting the additional receipts or other documents which had not been previously made available to respondent. After receipt and review of the transcript and the case file, the Court issued an order on November 9, 1987, reopening the record to allow petitioners, in the interest of fairly presenting their case, [10] the opportunity to submit original copies of canceled checks, receipts and other documents to support Schedule C expenses claimed and not previously allowed *468 by respondent. In addition, petitioners were ordered to explain the nature of the business disclosed on Schedule C and advise the Court how the expenses claimed related to the conduct of their business. The checks, receipts and other information received by the Court are summarized as follows: Amount of Checks or
Receipts Received
Petitioners'
in Support
Exhibit
Amount in
of Claimed
Designation
Controversy
Deductions
Car and truck expenses
A
$ 1,259.57
$ 1,216.52
Depreciation (5/12 of 38% of $ 14,200
B
2,248.30
-0-   Dues
C
39.91
[11] 39.91
Freight
D
88.05
[12] 88.05
Insurance
E
546.68
546.48
Interest
F
512.67
[13] -0-   Rent
G
3,609.47
3,655.57
Repairs
H
787.97
744.67
Travel and Entertainment
I
631.12
535.27
Utilities and Telephone
J
1,051.39
610.42
*469 Petitioners furnished the following explanation of their business and how the checks and receipts submitted related to their business: As to the explaination (sic) of the nature of business: Its location was indeed the Petitioners' home. The insurance was on the vehicle The utilities was (sic) the phone bills used for the phone, and the utilities paid were in lieu of partial rent for the premises. The rent and repairs claimed were for vehicle(s) only, and were not part of maintenance of office space in residence. The depreciation was for a partial year in which an owned vehicle was in use. The remainder of *470 the year a new vehicle was rented for the business use. The office in home served multiple purposes. It was there to maintain client files, prepare presentations for potential clients, and for meeting with potential clients and recruit and train potential salespeople. One cannot sell insurance, securities, or health products without these expenses. In Winter v. Commissioner,T.C. Memo. 1983-118 (involving a Florida resident), we stated "In evaluating whether petitioner has carried his burden through the mere submission of numerous receipts, etc., we are cognizant of a governing opinion by the Fifth Circuit [14] in Dowell v. United States,522 F.2d 708 (5th Cir. 1975). Consequently we thoroughly examined the evidence although we believe that we are entitled to hold petitioner responsible for his failure to correlate the evidence and to arrange it in a comprehensible form; we do not perceive it to be our duty to serve as his accountant." See T.C. Memo. 1983-118, 45 T.C.M. 897, 899, 53 P-H Memo T.C. para. (3, 118). *471 In Dowell v. United States,522 F.2d 708, 714 (5th Cir. 1975), the Fifth Circuit held that the Federal District Court for the Northern District of Texas erred in finding that a "blizzard" of bills, chits, etc., established the amounts, dates and places of the claimed expenditures rather than requiring that the taxpayers substantiate each such expenditure with the specificity required by statute. We have similar circumstances here, although perhaps a light snowfall rather than the blizzard described in Dowell, at least with respect to car and truck expenses and entertainment expenses claimed in the respective amounts of $ 1,259.57 and $ 631.12. Petitioners have submitted approximately 87 cash gas receipts. With the exception of 6-7 undated receipts, most of these were written on credit card slips as gas station/convenience stores from January through November 1983. Some of the receipts indicate travel overnight since they represent gas purchases in Mississippi, Tennessee, Louisiana, Texas, Missouri, Kansas, and Colorado. [15]
*472 Deductibility of overnight travel and entertainment expenses is governed by section 274(d), which disallows deductions for travel and entertainment expenses unless the taxpayer "substantiates by adequate records or by sufficient evidence corroborating his own statement" the amount of the claimed expense, the time and place of the travel or entertainment, the business purpose of the expense and the business relationship of the taxpayer to the persons entertained. These four elements must be established for each separate expenditure. Sec. 1.274-5(c)(1), Income Tax Regs. Respondent argues that all claimed expenses for travel overnight and entertainment cannot be allowed [16] since petitioners have failed to comply with the rigid substantiation requirements of section 274(d). We agree. Petitioners furnished no explanation of the auto overnight travel on the receipts or otherwise. Likewise, the entertainment receipts are inadequate. Some are undated, only one bears the name of either petitioner, and none of the receipts clearly indicated valid business purpose nor state the business relationship to petitioners of the persons entertained as specifically required by section 274(d)(4)(D). *473 Petitioners are no better off with respect to receipts purportedly verifying other claimed expenses of the Schedule C business. In fact, all we know of Mr. Telfeyan's Schedule C business activity, aside from the expenses listed on Schedule C, is the information on the receipts and petitioners' vague statement in their response to the Court's November 9, 1987, order that "One cannot sell insurance, securities, or health products without these expenses." Yet, petitioners would have us accept as adequate substantiation of business automobile expenses a multitude of receipts for gasoline, repairs and insurance, as well as automobile leasing expenses, utilities and telephone expenses without furnishing any information about their business operation or making any attempts to allocate the *474 obviously large amount of inherently personal expense in these claimed deductions. As previously stated, petitioners have the burden of proving they are entitled to the deductions claimed. We are not required to accept a taxpayer's uncorroborated argument as proof that disputed expenses are deductible. Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. Nor do the statements or bare assertions of a taxpayer that his return is correctly filed satisfy his burden of proof. Halle v. Commissioner,7 T.C. 245, 247-248 (1946), affd. 175 F.2d 500, 503 (2d Cir. 1949); Roberts v. Commissioner,62 T.C. 834, 839 (1974). Since most of the gas receipts were issued in the local Orlando area, it is possible that Mr. Telfeyan incurred some business automobile use that was local in nature and not subject to the stringent requirements of section 274(d). However, when taxpayers fail to provide any evidence by which we can determine the allocable business and personal portions of auto usage, no deduction is allowable. *475 Cobb v. Commissioner,77 T.C. 1096, 1101 (1981). This same rule applies equally to automobile repairs, insurance, depreciation, [17] and auto leasing payments. There is nothing in the record to indicate that the automobile expenses were not incurred for nondeductible commuting and pleasure trips. The telephone bills and canceled checks disclose that most of the claimed utilities/telephone expenses were incurred at a Lakeland, Florida, apartment used by petitioners Louis Telfeyan and Lynn Effer for the early part of 1983. Sometime in April or May, they move to 2701 Red Bug Drive, Casselberry, before acquiring their residence at Bridlebrook Drive, Casselberry. The telephone bills contain numerous long-distance calls to other Florida cities. As with the other expenses, none are allowable. Petitioners have furnished no information correlating *476 these calls to business activities nor, assuming some of this expense is business related, have they produced evidence of the respective business and personal portions of these claimed expenses. See Cobb v. Commissioner, supra at 1101. To summarize, petitioners have had the opportunity to furnish to the Court, receipts excluded at trial which petitioners claimed would have shown they were entitled to expenses which generated the large net loss reflected on their tax return. Petitioners furnished many receipts, but only for a portion of the expenses disallowed. However, they failed to present other evidence satisfactorily establishing the business purpose of the receipts submitted. Moreover, assuming some expenses were business-related, petitioners completely failed to provide information necessary to determine the respective business and personal portions of the amounts claimed. Petitioners have consistently resisted furnishing respondent with any information regarding most of the expenses which generated the large business net loss. When given the opportunity to furnish the Court receipts and other information necessary to establish that the receipts were *477 business-related, they were unwilling or unable to do so. A party's failure to produce evidence within his control gives rise to the presumption that the evidence, if produced, would be unfavorable. See Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners have utterly failed to show that they are entitled to Schedule C expenses in excess of the amount of $ 3,377 allowed by respondent. 5. Additions to Tax Under Sections 6653(a)(1) and 6653(a)(2)
Respondent has determined that petitioners' underpayment of tax is due to negligence or the intentional disregard of rules and regulations and has asserted additions to tax under Section 6653(a). It is well established that petitioners bear the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). This Court has repeatedly sustained these additions to tax in cases involving purported charitable contributions to "churches" that simply represent the use of funds for personal and family expenses. See *478 Davis v. Commissioner, supra at 820-821. See also Adamson v. Commissioner,T.C. Memo. 1986-489; Riggs v. Commissioner,T.C. Memo. 1986-317; Zollo v. Commissioner,T.C. Memo. 1986-60. Petitioners have failed to present credible evidence on this issue. Nor have they shown that they made a reasonable effort to properly document their other deductions. Accordingly, respondent is sustained. Damages Under Section 6673
Section 6673 provides an award for damages to the United States in an amount not in excess of $ 5,000 with respect to all actions commenced after December 31, 1982, when it appears to us that the proceedings have been instituted or maintained by the taxpayer's position in these proceedings is frivolous or groundless. We now consider respondent's motion for damages in the amount of $ 5,000 filed on October 5, 1987. When this case was called for trial, respondent requested that a pre-trial conference be held with respect to the issues to be decided. Petitioners were accompanied by tax preparer Slayback. The Court had its possession a copy of *479 Burwell v. Commissioner,89 T.C. 580 (1987), which had been filed on September 16, 1987 as 89 T.C. No. 41. Petitioners and Slayback were advised that all judges on this Court were familiar with and had tried cases involving the ULC Modesto charitable contributions issue present in the case before the Court, and that, as stated in Burwell, the Court had never allowed ULC Modesto deductions. Petitioners acknowledged receiving a copy of the Burwell case from respondent and that they had read the opinion. Nevertheless, petitioners insisted on trial, claiming that their case was different from the 130 cases mentioned in Burwell that had been decided adversely to taxpayers. The Court advised petitioners that respondent's motion for damages would be given serious consideration should the Court find that the decision in this case with respect to the disputed ULC Modesto contribution issue would be controlled by Burwell and many other cases previously decided. During trial and on brief, petitioners maintained their stubborn position before this Court that a deduction of their personal living expenses made to their ULC Modesto "church" bank *480 account was allowable under the tax laws despite the Court's decision in Burwell and many previous ULC Modesto cases. In petitioners' 6-page brief, replete with protester and irrelevant procedural contentions, they argue as follows: The Court then referred to this case as similar to 130 cases. This is no (sic) the case here. The Court said other Churches are recognized, the U.L.C. is not. This is not correct. For the year in question, the U.L.C. is a 170 organization. The Chief, Tax Exempt Division letter submitted to the Court, recognizes that, and further recognizes the Church's privilege of having accounts anywhere that may serve the purposes (sic) of the Church. Petitioners refused to meet with respondent or furnish documentary evidence necessary to the audit of their return; refused to meet or cooperate with respondent with respect to stipulating facts for trial; were advised of, but repeatedly refused to recognize other similar cases involving the nondeductibility of ULC Modesto contributions; and furnished the Court with nothing but repetitious and frivolous arguments which have been repeatedly rejected by this and other courts. We believe the delays and additional *481 work resulting to respondent and the Court from petitioners' frivolous position in this matter warrant an award damages to respondent in the amount of $ 2,500. [18]
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. Petitioners conceded by brief unreported income determined in respondent's notice of deficiency in the amount of $ 1,947. ↩
3. Our Rule 24, subparagraph (4) of paragraph (1), provides as follows: (4) Counsel Not Admitted to Practice: No entry of appearance by counsel not admitted to practice before this Court will be effective until he shall have been admitted, but he may be recognized as counsel in a pending case to the extent permitted by the Court and then only where it appears that he can and will be promptly admitted. * * * Rule 200 (d)↩ provides that written examinations for nonattorney applicants will be held every two years. There is no evidence in this record that Slayback ever presented himself or applied to take the non-attorney's written examination. Accordingly, there is no way that Slayback could be recognized as counsel for petitioners in this case. 4. Compare petitioners' evasive answer to respondent's request for admissions, no. 25: "Mr. Scott Slayback prepared the petition, request for place of trial, and motion for jury trial filed in this case." Petitioners replied "whomever the petitioners ask for aid in their preparation, is of no consequence as to whether they owe taxes as shown on the Notice of Deficiency." ↩
5. The total amount disclosed on petitioners' Schedule A-Itemized Deductions was $ 16,409.72 less a carryforward to 1984 of $ 7,145.60, leaving a net amount claimed on the 1983 return of $ 9,264.12. ↩
6. A few of the checks were apparently drawn on a Universal Life Church account in the names of Harry and Sheila Effer, Mrs. Telfeyan's parents, as to which petitioners were also signatories. ↩
7. The largest such deposit was a check for $ 7,000 which was deposited on October 12, 1983. ↩
8. Expenses were erroneously totaled. The correct amount of expenses listed is $ 13,218.19. At trial, respondent's attorney requests of petitioners for verification of the above expenses. Finally, Slayback brought in some documentary data. Based on the evidence submitted, respondent allowed the above expenses marked by asterisk, which total $ 2,5532.01. This amount allowed includes freight of $ 88.95 rather than the amount claimed by petitioners. An Appeals Division officer reviewed the examiner's report and increased the expenses allowed from $ 2,532.01 to $ 3,377. The revised expense allowance was based on a profit rate calculated from Dunn & Bradstreet's Norms and Key Business Ratios. ↩
9. Incorrect total due to mathematical error. Correct total is $ 6,742.93. ↩
10. Cf. Dunn v. Commissioner,T.C. Memo. 1988-45, a case in which we refused to allow checks and receipts into evidence which were not presented to respondent 15 days before trial. Here, unlike Dunn v. Comminssioner, supra,↩ our pretrial order did not include a provision requiring the parties, before trial, to exchange or stipulate documents intended to be entered into evidence at trial. 11. Petitioners furnished checks for magazine subscriptions to Redbook, Sporting News, Cosmopolitan, etc. Since no explanation was furnished as to what business purpose these magazine purchases served, the expenses are unallowable. ↩
12. The Court's order on November 9, 1987, erroneously included this amount as requiring substantiation by check or receipt. It had previously been allowed by respondent's auditor. See footnote 8. ↩
13. Although petitioners designated exhibit F as including receipts for interest, they failed to submit receipts for interest expense. ↩
14. This case is appealable to the Eleventh Circuit, which in Bonner v. City of Prichard,661 F.2d 1206, 1209↩ (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit Court prior to October 1, 1981. 15. It appears from receipts issued in these states that petitioners traveled to and from Colorado from June 5th-20th, and overnight in that state for approximately 7-8 days. ↩
16. Respondent claims that some of the gas receipts are suspect as to authenticity. For example, respondent questions how petitioners can reasonably expect this Court to believe that petitioners could buy gas in Dalhart, N. Texas and High Springs, Florida (northwest of Gainesville) on June 20, 1983, a distance of approximately 1160 miles. See Rand McNally Standard Highway Mileage Guide (1985). ↩
17. Petitioners furnished no substantiation of the cost basis, description of or other information of a vehicle alleged to be Accelerated Cost Recover System (ACRS) 3-year property and used for 5/12 of the year. Exhibit B is simply an additional copy of the Form 4562 depreciation schedule attached to their 1983 return. ↩
18. We have consistently awarded damages to the government in cases involving the issue of claimed charitable deductions to ULC Modesto. Burwell v. Commissioner,89 T.C. 580, 597-599 (1987). See also Mulvaney v. Commissioner,T.C. Memo. 1988-243; Meade v. Commissioner,T.C. Memo. 1988-108; Webb v. Commissioner,T.C. Memo. 1988-80. We have also awarded damages in cases where the taxpayer asserted a frivolous ULC argument and another argument. See Mulvaney v. Commissioner, supra,↩ and cases there cited.