BURKE, Judge.
Emmett Leroy Davis was convicted of one count of intentional murder, see § 13A-6-2(a)(1), Ala. Code 1975, and one count of felony murder (robbery), see § 13A-6-2(a)(3), Ala. Code 1975, resulting from the killing of Helen Mayo. Davis was sentenced to 99 years' imprisonment on each conviction; the sentences were ordered to run consecutively.
Because Davis does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. On December 3, 2012, emergency personnel found 87-year-old Mayo with severe blunt-force trauma to the face inside her home in Cullman County. Mayo stated that she had been "pistol whipped" by a man that "had done work for [Mayo's neighbor] in the past." (R. 485.) Mayo also stated that the man wanted money for a "shot" for "his eye." (R. 486.) Mayo later died as a result of complications resulting from those injuries.
Testimony established that, the day before the attack, Davis, who was known as a local handyman, visited several homes in the area seeking either employment or money. On that day, Davis's vehicle was seen parked in the driveway of Mayo's home. Based on Mayo's statements and on interviews from Mayo's neighbors, Davis was developed as a person of interest. After he was located, Davis attempted to flee from law enforcement. At the police station, Davis admitted to having an artificial eye that caused him pain.
Physical evidence, including certain DNA evidence that matched the DNA profile of Davis, was recovered from the scene. Also, law enforcement recovered from Davis's home a pistol containing DNA evidence that matched the DNA profile of Mayo.
*1278 I.
Davis argues that the circuit court erred by denying his motion to suppress the DNA evidence obtained from his person. Specifically, Davis argues that the taking of his saliva was a "critical stage" of the proceedings and that, pursuant to Rule 16.2, Ala. R. Crim. P., he was entitled to the presence of counsel when the evidence was collected. (Davis's brief, pp. 43-44.)
Before trial, the State filed a request for the production of Davis's saliva for the purpose of obtaining his DNA profile. Both the State's request for production and the circuit court's order permitting the seizure of a saliva sample from Davis were served on Davis and his trial counsel. There is nothing in the record showing that Davis filed an objection to the taking of the DNA swab.
Rule 16.2(b), Ala. R. Crim. P., provides, in pertinent part:
"Upon motion of the state/municipality and solely in connection with the particular offense with which the defendant is charged, the court shall order the defendant to:
"....
"(6) Permit the taking of samples of defendant's hair, blood, saliva, urine, or other specified materials which involve no unreasonable intrusions into the body;
"....
"The defendant shall be entitled to the presence of counsel at the taking of such evidence."
Initially, we note that Rule 16.2 does not require the presence of counsel, but merely permits an accused, upon request, to have counsel present at the taking of a saliva sample.
Furthermore, Davis was not entitled to have counsel present at the execution of a search warrant permitting the collection of Davis's saliva as evidence. Here, the record shows that the taking of Davis's saliva in order to obtain his DNA profile occurred before the initiation of formal adversarial proceedings and, thus, was not a "critical stage" of his proceedings. Therefore, the circuit court did not err when it denied Davis's motion to suppress.
Finally, error, if any, was harmless. Davis admits that the State also obtained a search warrant to collect his DNA profile via fingernail clippings and scrapings. See Rule 45, Ala. R. App. P. Accordingly, Davis is not entitled to relief on this issue.
II.
Davis argues that the circuit court erred by allowing the admission of State's Exhibits 68, 69, 70, 71, 72, and 122, all of which were photographic evidence. Specifically, Davis argues that there was a "missing link" in the chain of custody for the identified photographic evidence. (Davis's brief, p. 52.)
At trial, an exchange occurred as follows:
"[Prosecutor]: I'm also going to show you some more pictures here. Me and [defense counsel] have already stipulated to State's Exhibits Number 67, 68, 69, 70, 71 and 72. I'll ask if you recognize these?
"(State's Exhibits Number 67 through 72 were marked for identification and admitted into evidence.)
"[Officer Martin]: Yes, I do.
"[Prosecutor]: What are those pictures of?
"[Officer Martin]: These are photos from what we're calling the foyer. Some of it is stains believed to be blood."
(R. 617-18.) Later, the following exchange occurred:
*1279 "[Prosecutor]: Judge, I move to introduce State's Exhibit 122.
"[Defense counsel]: Is that one of the previous ones, [prosecutor]?
"[Prosecutor]: Yeah, this is one of the ones I showed you. Everything is what we went over earlier.
"[Defense counsel]: Okay.
"THE COURT: It's admitted.
"(State's Exhibit Number 122 was admitted into evidence.)"
(R. 623-24.)
Initially, we note that State's Exhibits 67, 68, 69, 70, 71, 72, and 122 were admitted into evidence by stipulation. See Ex parte Deardorff, 6 So.3d 1235, 1241-42 (Ala. 2008) ("Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby"). Moreover, Davis did not raise an objection regarding the admission of the photographic evidence. "Review on appeal is restricted to questions and issues properly and timely raised at trial." Newsome v. State, 570 So.2d 703, 717 (Ala. Crim. App. 1989). Therefore, Davis's argument is not preserved for appellate review.
Further, the argument is meritless. A chain of custody is not required to be established for photographic evidence. See § 12-21-13, Ala. Code 1975. Accordingly, Davis is not entitled to relief on this issue.
III.
Davis argues that the circuit court erred by admitting "testimony from Officer [Bates] regarding 'hand squeezes and whispers.' " (Davis's brief, p. 56.) Specifically, Davis argues that, under Rule 702, Ala. R. Evid., Officer Bates lacked knowledge and training to conduct an interview using such a method.
Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."
During voir dire of Officer Bates, defense counsel asked Officer Bates if he had specialized training "with respect to the hand squeezing and the whispers." (R. 478.) Officer Bates indicated that he did not but that he had used the method in previous situations involving persons that could not verbally communicate. Officer Bates also indicated that he could testify regarding some of the specific questions asked of Mayo that elicited hand squeezes and whispers in response. Defense counsel then argued that it had not been shown that Officer Bates had any training to give testimony regarding his method of communication with Mayo. In response, the circuit court held as follows:
"THE COURT: [Defense counsel], I don't think he's been asked yet what questions were responded to verbally and what questions he might have gotten a response using the hand-squeeze method. I don't think it's necessary for him to be an expert. I don't know that there is such a thing as an expert in hand-squeeze communication. You have said you're not challenging the status of the victim at that time, and that is in my opinion the crux of the issue.
"I do find there's sufficient evidence that she could have been in fear of impending death at the time she made these communications, so I will overrule your objection and allow the witness to respond.
"[Defense counsel]: Is the Court taking notice then that it is accepting this as a method of questioning a witness?
"THE COURT: I'm saying that is a description of what may have occurred *1280 between this witness and the decedent. And you can explain or challenge it in whatever way you would like to on your cross-examination and make those arguments to the jury, but I think that goes to the weight, not the admissibility."
(R. 482-83.)
Rule 701, Ala. R. Evid., provides:
"If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."
Here, the circuit court correctly relied on Rule 701 to find Officer Bates's testimony admissible. The record shows that Officer Bates's testimony was based on inferences that were rationally based on his perception. Thus, the circuit court correctly allowed Officer Bates's testimony. Accordingly, Davis is not entitled to relief on this issue.
IV.
Davis argues that the circuit court erred by admitting Mayo's DNA into evidence. Specifically, Davis argues that the State failed to show that the collection of Mayo's DNA was lawfully obtained without a search warrant. Davis also argues that "[t]his argument is not about standing." (Davis's brief, p. 66.) We disagree. Because Davis did not possess any legitimate expectation of privacy or proprietary interest in the saliva taken from Mayo, he does not have standing to challenge the seizure of a DNA sample from her person. See, e.g., State v. Jemison, 66 So.3d 832, 843 (Ala. Crim. App. 2010). Accordingly, Davis is not entitled to relief on this issue.
V.
Davis argues that the circuit court erred by denying his motion to suppress evidence collected pursuant to a search warrant of his home, which search warrant, he says, was based on "unsubstantiated statements and/or omissions in the probable cause affidavit." (Davis's brief, p. 66.) Specifically, Davis argues that the affidavit submitted in support of the search warrant (1) omitted the fact that Mayo had stated a name sounding like "Jim" when discussing the attack, (2) incorrectly attributed to Marie Woodard statements indicating that Davis had asked Woodard for money while at her residence and that Davis had appeared agitated, (3) noted that Davis had attempted to leave through the rear of his residence when Arab police knocked on his front door, (4) noted that Davis had been present in Mayo's neighborhood and in the vicinity of her home on December 2, 2012, and (5) noted that the majority of the latex gloves seen in Davis's vehicle were in the rear of the vehicle when photographic evidence showed that the majority of the gloves were in the front seat.[1]
On February 5, 2016, the circuit court held a suppression hearing during which Officer Craig Montgomery of the Arab Police Department testified regarding the facts contained in the affidavit. In denying Davis's motion to suppress, the circuit court held: "And I find for the record that you did not establish any willful, misleading or false statement in the affidavit. And even excluding those items that you have challenged, I do find that there's probable cause for the District Judge in [Marshall] County." (R. 210.)
*1281 In Washington v. State, 922 So.2d 145, 172-73 (Ala. Crim. App. 2005), this Court held:
"In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed. 2d 667 (1978), the United States Supreme Court recognized a limited right to challenge the veracity of an affidavit submitted in support of a warrant; the Court held that
" 'where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.'
" 438 U.S. at 155-56, 98 S.Ct. 2674. The holding in Franks has been interpreted to include not only false statements in an affidavit, but also material omissions from an affidavit. See Wyley[ v. State, 565 So.2d 1200 (Ala. Crim. App. 1990) ]; Williams v. State, 440 So.2d 1139 (Ala. Crim. App. 1983) ; and 2 W. Lafave, Search and Seizure, § 4.4(b) (3d ed. 1996), and the cases cited therein.
"... In United States v. Colkley, 899 F.2d 297 (4th Cir. 1990), the United States Court of Appeals for the Fourth Circuit upheld an affidavit submitted in support of an arrest warrant that omitted the fact that numerous witnesses had failed to identify the defendant in a photographic lineup. In doing so, the Court held that, in the context of omissions, the Franks requirement that the falsity be made intentionally or with reckless disregard for the truth requires more than the mere fact of omission; the Court explained:
" 'Affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L. Ed. 2d 684 (1965). An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. However, every decision not to include certain information in the affidavit is "intentional" insofar as it is made knowingly. If, as the district court held, this type of "intentional" omission is all that Franks [v. Delaware, 438 U.S. 154 (1978),] requires, the Franks intent prerequisite would be satisfied in almost every case.
" ' Franks clearly requires defendants to allege more than "intentional" omission in this weak sense. "The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." United States v. Burnes, 816 F.2d 1354, 1358 (9th Cir. 1987). Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate. See [United States v.] Reivich, 793 F.2d [957,] 961 [ (8th Cir. 1986) ]. To obtain a Franks hearing the defendant must show that the omission is the product of a "deliberate falsehood or of reckless disregard for the truth." Franks, 438 U.S. at 171, 98 S.Ct. at 2684.
*1282 "[M]ere[ ] negligen[ce] in ... recording the facts relevant to a probable-cause determination" is not enough. Id. at 170, 98 S.Ct. at 2683.
" 'This case presents a question of omission rather than commission on the part of the agent. While omissions may not be per se immune from inquiry, see United States v. Owens, 882 F.2d 1493, 1498-99 (10th Cir. 1989) ; Reivich, 793 F.2d at 961, the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. The potential for endless rounds of Franks hearings to contest facially sufficient warrants is readily apparent.
" 'Here [the defendant] made no showing, and the district court possessed no evidence, that agent Moore had the requisite intent to mislead. The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination. At the very worst, he was merely negligent in disclosing all relevant considerations to the magistrate. His acts fell far short of the level of flagrant police action Franks is designed to prevent, and a hearing under that decision was not required.'
" [Montana Power Co. v. Federal Energy Regulatory Commission ] 599 F.2d [295] at 300-01 [ (9th Cir. 1979) ]."
Washington, 922 So.2d at 172-74.
Here, Davis failed to demonstrate that the affidavit was the result of perjury or a reckless disregard for the truth. For instance, with regard to the statement attributed to Woodard, i.e. that Davis had appeared agitated when speaking to her, Woodard testified that Davis had made comments about personal safety that "just came out of the blue," were not normal, and were "strange." (R. 82-83.) Also, Officer Montgomery testified that he did not include the information about Mayo stating a name sounding like "Jim" because, he said, he simply forgot during the preparation of the warrant. (R. 852.) Furthermore, Davis failed to demonstrate that the "unsubstantiated statements" or "omissions" from the affidavit were material to the finding of probable cause. "In determining whether a statement or omission is material, the affidavit must be corrected, i.e., the false statements removed or the omissions added, and then reviewed to determine whether the affidavit, as corrected, was sufficient to establish probable cause." Washington, 922 So.2d at 174. Therefore, the circuit court did not err when it denied Davis's motion to suppress on this ground. Accordingly, Davis is not entitled to relief on this issue.
VI.
Davis argues that the circuit court erred by allowing the State to suppress a "chain-of-evidence form." (Davis's brief, p. 74.) Specifically, Davis argues that the State withheld material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
This argument, however, which Davis has raised for the first time on appeal, is not preserved for appellate review.
" 'Review on appeal is restricted to questions and issues properly and timely raised at trial.'
*1283 Newsome v. State, 570 So.2d 703, 717 (Ala. Crim. App. 1989). 'An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.' Pate v. State, 601 So.2d 210, 213 (Ala. Crim. App. 1992). ' "[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof." ' McKinney v. State, 654 So.2d 95, 99 (Ala. Crim. App. 1995) (citation omitted). 'The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). 'The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.' Ex parte Works, 640 So.2d 1056, 1058 (Ala. 1994)."
Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala. 2003).
Moreover, even if this issue had been properly preserved, Davis failed to meet his burden of establishing a Brady violation and, thus, his argument is without merit. Accordingly, Davis is not entitled to relief on this issue.
VII.
Davis argues that the circuit court erred by sentencing him to two counts of murder of the same victim. Specifically, Davis argues that his convictions violate double-jeopardy principles because, he says, he is being punished twice for the same offense. As noted above, Davis was convicted of intentional murder and felony murder based on the predicate felony of first-degree robbery.
Section 13A-6-2(a)(1), Ala. Code 1975, defines intentional murder as follows: "A person commits the crime of murder if ... [w]ith intent to cause the death of another person, he or she causes the death of that person or of another person." Felony murder, as defined by § 13A-6-2(a)(3), Ala. Code 1975, occurs when a person
"commits or attempts to commit ... robbery in any degree ... and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person."
Both intentional murder and felony murder are violations of the same statute prohibiting murder. See Commentary to § 13A-6-2 (" Section 13A-6-2 attempts to clarify, simplify, and justify working criteria for what constitutes murder"). In Ex parte Rice, 766 So.2d 143 (Ala. 1999), Rice was indicted for two counts of capital murder, murder-robbery and murder-kidnapping, and was convicted of two counts of felony murder as lesser-included offenses, specifically of a felony murder committed during a kidnapping and of a felony murder committed during a robbery. The Alabama Supreme Court in Rice determined that Rice could not be convicted of two counts of felony murder and sentenced twice and stated:
"Our conclusion is consistent with decisions of the Court of Criminal Appeals holding that a defendant who commits one killing generally cannot legally be convicted and sentenced for two murders, see, e.g., Rolling v. State, 673 So.2d 812 (Ala. Crim. App. 1995) ; Meyer v. State, 575 So.2d 1212 (Ala. Crim. App. 1990) ; Coral v. State, 628 So.2d 954 (Ala. Crim. App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993) ; Loggins v. State, [771 So.2d 1070] (Ala. Crim. App. 1999) [, *1284 aff'd, 771 So.2d 1093 (Ala. 2000) ]. It is also consistent with the decisions of other jurisdictions that have addressed the issue, see, e.g., Gray v. State, 463 P.2d 897, 911 (Alaska 1970) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Arnett, 158 Ariz. 15, 19-20, 760 P.2d 1064, 1068-69 (1988) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); People v. Lowe, 660 P.2d 1261, 1269-71 (Colo. 1983) (holding that a defendant cannot be convicted of both murder after deliberation and felony murder); State v. Chicano, 216 Conn. 699, 705-11, 584 A.2d 425, 429-31 (1990) (holding that a defendant cannot be convicted of both felony murder and first-degree manslaughter as a lesser included offense of intentional murder); State v. Lewis, 245 Conn. 779, 818, 717 A.2d 1140, 1161 (1998) (holding that a defendant cannot be convicted of both murder and felony murder); Gaskin v. State, 591 So.2d 917, 920 (Fla. 1991), vacated on other grounds, 505 U.S. 1244, 113 S.Ct. 22, 120 L.Ed.2d 948 (1992) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); Pressley v. State, 235 Ga. 341, 219 S.E.2d 418 (1975) (holding that a defendant cannot be convicted of both malice murder and felony murder); Chavez v. State, 534 N.E.2d 731, 739 (Ind. 1989) (holding that a defendant cannot be convicted of both murder and felony murder); People v. Pitsonbarger, 142 Ill.2d 353, 154 Ill.Dec. 562, 568 N.E.2d 783, 792 (1990) (holding that a defendant cannot be convicted of both intentional murder and felony murder), vacated on other grounds; State v. Gilroy, 199 N.W.2d 63, 68 (Iowa 1972) (holding that a defendant cannot be convicted of both premeditated murder and murder in perpetration of robbery); State v. Sullivan, 224 Kan. 110, 112, 578 P.2d 1108, 1111-12 (1978) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Dechaine, 572 A.2d 130, 136 (Me. 1990) (holding that a defendant cannot be convicted of both intentional or knowing murder and depraved-indifference murder); Wooten-Bey v. State, 308 Md. 534, 520 A.2d 1090, 1092 (1987) (stating that a defendant cannot be convicted of both premeditated murder and felony murder); People v. Densmore, 87 Mich.App. 434, 440-41, 274 N.W.2d 811, 814 (1978) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Grayson, 546 N.W.2d 731, 739 (Minn. 1996) (holding that a defendant cannot be convicted of two variations of murder); State v. White, 254 Neb. 566, 577 N.W.2d 741, 745-48 (1998) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Watson, 261 N.J. Super. 169, 618 A.2d 367, 373 (1992) (holding that a defendant cannot be convicted of both purposeful and knowing murder and felony murder); State v. Wilson, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Huertas, 51 Ohio St. 3d 22, 28, 553 N.E.2d 1058, 1066 (1990) (holding that a defendant cannot be convicted of both aggravated murder with prior calculation and design, and aggravated murder in the course of aggravated burglary); State v. White, 549 N.W.2d 676, 681 (S.D. 1996) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); State v. Hurley, 876 S.W.2d 57, 69-70 (Tenn. 1993) (holding that a defendant cannot be convicted of both premeditated murder and felony murder), superseded by statute; *1285 Ervin v. State, 991 S.W.2d 804 (Tex. Crim. App. 1999) (holding that a defendant cannot be convicted of both manslaughter and intoxication manslaughter); Clagett v. Commonwealth, 252 Va. 79, 95-96, 472 S.E.2d 263, 273 (1996) (holding that a defendant who killed more than one person cannot, as to each victim, be convicted of capital murder for the murder of multiple persons); Byrd v. United States, 510 A.2d 1035, 1036-37 (D.C. App.1986, en banc) (holding that a defendant cannot be convicted of both premeditated murder and felony murder); cf., State v. Landgraf, 121 N.M. 445, 453, 913 P.2d 252, 261-62 (App. 1996) (holding that a defendant cannot be convicted of two variations of vehicular homicide)."
Rice, 766 So.2d at 151-52.
When multiple offenses are prosecuted in one trial, the Double Jeopardy Clause "prevent[s] the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). A defendant suffers multiple punishments in violation of the Double Jeopardy Clause when he or she is convicted of more offenses than the legislature intended. Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). In Missouri v. Hunter, the United States Supreme Court noted that "[t]he opinion in Blockburger[ v. United States, 284 U.S. 299 (1932),] stated: 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' 284 U.S. at 304." 459 U.S. at 366. However, the Court further stated that " '[t]he Blockburger test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.' Albernaz v. United States, ... 450 U.S. [333,] 340 [ (1981) ] (emphasis added)." Id at 367.
Both crimes of which Davis was convicted constitute murder under the same statute. In this case, there was one murder of one victim under one set of circumstances. Section 13A-6-2(a) commences by stating that, "[a] person commits the crime of murder if he or she does any of the following ...," thus indicating that the legislature's intent was to set out alternative methods of committing murder. Moreover, that statute provides a single sentencing provision that applies to both subsection (a)(1) and subsection (a)(3).
"The inquiry is whether the Legislature intended to permit multiple punishments. The Blockburger test is a useful tool for ascertaining legislative intent, but it is not the only tool. Other (nonexclusive) considerations relevant to determining whether the Legislature intended multiple punishments are: whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the 'gravamen' of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the 'same' under an imputed theory of liability which would result in the offenses being considered the same under Blockburger (i.e. a liberalized Blockburger standard utilizing *1286 imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes."
Ervin v. State, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).
Felony murder and intentional murder may be considered as separate offenses under the test set out in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), because felony murder requires proof of a felony, which intentional murder does not, and intentional murder requires proof of intent, which felony murder does not. However, it is clear that the legislature intended that both constitute murder, a single offense carrying a single sentence. Therefore, Davis's convictions and sentences for the same murder violate the Double Jeopardy Clause.
This case is remanded to the circuit court to vacate one of Davis's murder convictions and its corresponding 99-year sentence. Due return shall be made to this Court within 42 days of the issuance of this opinion.
REMANDED WITH DIRECTIONS.*
Windom, P.J., and Welch and Kellum, JJ., concur.
Joiner, J., concurs in the result.

In his appellate brief, Davis raises additional claims in support of his argument regarding the motion to suppress. Those claims, however, have not been preserved for appellate review. See Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala. 2003).

Note from the reporter of decisions: On December 8, 2018, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On January 5, 2018, that court denied rehearing, without opinion. On March 16, 2018, the Supreme Court denied certiorari review, without opinion (1170328).